Peck, J.,
delivered the opinion of the Court.
This claimant states in his petition that on the 27th day of January, 1852, he entered into a contract with the government for the erection of a liglit-house on Seven-Foot Knoll, at the mouth of the Patapsco river.
By the terms of the contract the plans and specifications for the structure were to he furnished by an engineer to be appointed by the Fifth Auditor of the Treasury Department, who appointed B. F. Isherwood as such engineer.
That it was stated to claimant that the bottom of the knoll consisted of hard sand, and that plans and specifications would be prepared adapted to such soil, which was indispensable to their use.
That the claimant made no soundings or examinations of the knoll, it being his duty to follow strictly the plans and specifications furnished by said Isherwood.
That upon the receipt by him of the plans and specifications he forthwith entered upon the performance of the contract, and employed Murray & Hazelhurst to furnish all the iron work, and Gault & Brother to furnish all the stone required.
That after all the iron and a greater portion of the stone had been delivered, and the work commenced, it was discovered that the bottom of the knoll was not hard sand, but consisted of soft mud, into which the piles sunk of their own weight to a depth of sixteen feet.
That these facts having been represented to the Light-house Board, soundings were made which verified their truthfulness and showed that the work could not be prosecuted pursuant to the plans furnished.
*215 That the Light-house Board declined to take any further action in the premises, because the plans had been furnished by other officers, under a different organization, and the new board declined to modify the original plan or to take any responsibility about it; therefore, the further prosecution of the work being impossible, all the material provided was left on the hands of the contractors, unavailable for the uses for which they were designed.
Application was made to the Secretary of the Treasury, reciting the contract, the impossibility of its performance, and asking relief, which was refused.
That Murray & Hazelhurst and Gault & Brother are the only parties interested with the claimant, who seeks to recover $10,301 33.
The contract and specifications, as also the letter of the Secretary of the Treasury, with the statement of claimant to him, asking relief, are made exhibits.
The petition is verified by James Murray, of the firm of Murray & Hazelhurst.
The specifications were made a part of the contract, and the two will be considered as one instrument.
The claimant covenanted that he would, on or before the first day •of July, 1853, find all the materials and build a light-house, in a substantial manner, on what is called Seven-Foot Knoll, &c., the said light-house to be built on what is called Potts’s pile principle, and in all other respects according to the specifications; to fit the same up, ■&C., with French lenticular apparatus, ready for public use, &c.; the light-house to remain good for three years after completion ; for which he was to be paid $11,000 when the piles should be driven and completely prepared for the first course of masonry, and, when the entire work should be completed, including the lens, to the satisfaction of Benjamin F. Isherwood, or of such other person as the Secretary of the Treasury might appoint to oversee or inspect the work, the further sum of $16,000.
The specifications appear to be very minute in detail, both as to iron and stone work.
The foundation was to consist of hollow cast-iron piles, the outer circle, measuring from centres of piles, to be 21 feet diameter; the inner circle, 15| feet diameter, &c., and to be sunk “ fifteen feet” into the sand by “ Potts’s patent pneumatic system of driving hollow piles;” the tops of the caps and rough-stone to be at the level of extreme low water.
It was insisted at the hearing of this cause that the precise spot for *216 the location of the light-house was indicated to the claimant on the Coast Survey maps, at the execution of the contract; that he took upon himself every hazard as to the sufficiency of the soil for a foundation, and was hound to ascertain the character of the land covered with water, and therefore could not recover. Authorities were cited to us which it was assumed sustained this position. We .do not so understand the obligation entered into by the claimant.
It was conceded on the argument that Seven-Foot Knoll is about five eighths of a mile long by two-fifths of a mile wide. This was a large surface to examine, even if that duty had devolved upon the claimant; but the record shows that Mr. PleasontoD, then in charge of light-houses, concluded “that it would be safer to send an officer of the Coast Survey to fix upon the site than to rely upon that marked on the chart,” and directed that an officer should be sent to fix the site. (See his letter of 7th September, 1852.) The specifications, apart from all other proofs, control this question, the first of which is as follows : “ The site of the light-house to be in about ten feet water, to be selected by the engineer appointed by the Fifth Auditor,” &e. Under these circumstances Sickels was not called ripon to examine for himself as to the character or suitableness of the soil for a foundation, even had he known the exact site in time to do so ; but the proof shows that the officer who was to select the site, and who drove the stake as a guide to the contractor, did not do so until the time when the iron piles were taken to it to be sunk for permanent location. It must be remembered that Mr. Sickels did not suggest the plan ; that was chosen for him; his judgment and skill were not called into requisition ; he did not propose to guarantee in any way the adequacy of the foundation, or its adaptation to the desired use. His agreement was to furnish iron piles of the required dimensions and of sufficient length to reach the top of the water, and to penetrate fifteen feet into the earth under it, and to sink them where directed so to do by this particular Potts process. This was the extent of his obligation as to foundation; the rest was assumed by the government.
Independent of all deductions from the specifications, the government engineer states that the appropriation was insufficient to erect a light-house upon any other principle, and that this plan was adopted of necessity, the officer in charge of this branch of governmental duty believing he knew exactly the character of the soil upon which the structure was to rest.
When the piles were placed in position to be sunk by the process named, “ they were forced with difficulty through the first three feet *217 of the soil, the ground for that distance being perfectly firm, when its character suddenly changed into a bed of quicksand of so little resistance that the heavy iron pile sunk by its own weight, and entirely disappeared from sight.” This is the language of the engineer in charge, and seems to be conclusive as to the want of adaptation of the plan to the purposes designed.
This witness also testifies that it was a “physical impossibility” to complete the structure upon the plan proposed. This would seem to settle the question as to the propriety of any further effort on the part of the claimant to prosecute his contract to completion. This proof is uncontradicted. The plan governed everything, and that was a failure. Without fault of his, the work was impossible to this contracting party.
We think, therefore, the claimant should recover; but when we examine the proofs to settle upon an amount, we are embarrassed by its uncertainty.
It is to be regretted that a case like this, resting altogether on proofs about quantities and prices, should not be so presented as to enable us to do justice.
It is the duty of a claimant to show all the facts which will entitle him to a judgment, and which will enable us to determine the amount of it. We must be convinced without a resort to our guessing faculties, and what is not clearly shown to be due should be rejected. We shall be governed by facts established in conformity with known rules of evidence, nor will these be relaxed because the government is defendant ; hardships may occur, but generosity is no part of judicial duty.
The claimant seeks to recover the difference in value between the iron piles furnished by Murray & Hazelhurst and those lost to them and not recast. It would be supposed that in articles of the bulk and value of iron piles, the exact number lost or recovered would be shown, as also the value of each, since they were sold by weight. Mr. Hazelhurst, one of the firm which furnished the iron-work, makes an estimate of the value of the seventeen piles which he says were recovered, without furnishing any information by which his estimates can be tested.
How many piles sunk into the quicksand and were wholly lost does not appear, nor does it appear how many of those which fell over were not recovered for want of timely effort; seventeen out of thirty or more piles were recovered, but why more were not recovered is *218 not sufficiently explained. It is true Mr. Hazelliurst says “ we recovered the seventeen piles which were lying horizontally on the bottom,” intimating that these were all, but it is only an intimation, and it would seem that he could have placpd this matter beyond cavil.
Wiegand, the foreman of the witness Hazelliurst, says “ he found most of the files lying on the bottom.” “ I recovered most of them,” and that when recovered they were taken back to the shop and broken up. Wiegand does not name any number of piles that were recovered, but knows he did not get all, though he got most of them. In this uncertainty, it is difficult to ascertain what sum should be allowed for piles.
If there was negligence in recovering any of these piles, this record does not show it, and this fact may form an element in estimating damages.
Again, as to value: Hazelliurst says they were to receive $73 40 per ton for the piles, and they allowed but thirty dollars per ton for what were recovered — in all, $728 62. Wiegand says that, in recasting, the piles would lose from five to ten per cent, in weight, and the depreciation besides is one per cent, per pound. If this be correct, and we properly understand his testimony, the allowance of #728 62 is too small.
Cyrus Gault says that his firm erected the scaffolding from which to sink the piles, &c. Wiegand says the scaffold was built by hands from the shop of Murray & Hazelhurst. This discrepancy is referred to because each firm probably charged this expense in their lumping accounts, as presented by this claim. Its cost was considerable, and should not be twice reimbursed; but the cost is not shown, so that the amount can be deducted from either.
Gault & Brother fix the value of the stone furnished and the work actually done by them at #3,075 92, for which, on its return to them, they give a credit of only #309. Cyrus Gault says : “ I cannot state how much we actually received for it.” What was actually received is what we desire to know, and the witness should have given the amount, or some approximation to it. It may be that #309 is all the stone, in its then condition, would have sold for. He says it was all it was worth to them; he should have added, or to any other person.
The difference between three thousand and three hundred dollars, in the amount charged and allowed as the value of the identical stone, which is not shown was either moved, changed in form, or reduced in value, is too great not to excite observation.
*219 The claimant appears to have expended some uncertain sum about \is contract, which he fixes in his letter to the Secretary of the Treas-Y at $560. The only witness who testifies on this point says : “ I Xthat Mr. Sickels expended money on the work; I think about m of $600.”
This is altogether unsatisfactory. Such a fact we suppose is susceptible of much better proof.
Murray & Hazelhurst and Gault & Brother were interested in the contract; each firm acquired an interest of one-sixth from Sickels, and a like interest from Pontez, the agent of Potts, the inventor of the apparatus, &c., for sinking the piles. A member of each of these firms testifies in this case.
This fact may not now reach their competency in this court. Whether Congress, when declaring that a party or one interested in the issue should not for that reason be excluded from giving evidence, intended to include cases in which the United States is a party, we do not now decide, that point, not having been discussed on the argument. It may be that self-interest, heretofore considered too strong in its antagonism to conscience, will also be found too strong for indiscriminate legislative favor, especially so in cases where all the litigants cannot participate in the privilege.
In this case two of the witnesses, although testifying about matters of direct interest to themselves, of facts about which they were act* ing, are by no means explicit; such witnesses should be held to full and strict explanations; generalities and vagueness should be avoided by them, if they desire to avoid scrutiny.
We reject the amounts claimed as having been paid to Pontez for the use of Potts’s invention, which does not appear to have been called in requisition, believing he was compensated by his interest in the contract, for which he received a consideration on parting with it to Murray & Hazelhurst and Gault & Brother.
The reports of T. A. Jenkins, William Dennison, and others are not in proof. If their authenticity was established, their connection with the case is not shown; they are no part of the res gesta, and, so far as we can see, are alike strangers to Sickels and the record.
This case will be referred to Halsey L. Merriman, of Washington, a special commissioner, to take further proofs as to the items of claim apparently due to Murray & Hazelhurst and Gault & Brother, to the end that -the amount justly due to them upon the principles .indicated by this opinion may be shown. Of the time and place of hearing such *220 proofs notice shall he given to the Solicitors for the government and of claimant, which proofs the commissioner will report to ns, together with his opinions thereon.
Messrs. Carlisle and McPherson for claimant.
Mr. W. W. Ketcham, United States Solicitor, and Mr. J. B. Kerr, Deputy Solicitor, for the government.