425 F.2d 1260
 MOUNTAIN HOME CONTRACTORS, a Joint Venture, Consisting of Arthur A. Danekas, W. G. Ellis, John J. Martin and Sea View Lumber Co., Inc., a California Corporation
v.
The UNITED STATES.
 No. 87-63.
 United States Court of Claims.
 May 15, 1970.
 
 Peter A. Lewi, Los Angeles, Cal., for plaintiff. John J. Geraghty, Raleigh, N. C., attorney of record; Peter A. Lewi, Los Angeles, Cal., of counsel.
 Robert R. Donlan, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.
 Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.
 ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
 SKELTON, Judge.
 
 
 1
 This lawsuit by plaintiff, Mountain Home Contractors,[1] arises out of a Capehart-Housing contract with the Department of the Air Force for the construction of 300 housing units at a total contract price of $4,918,600. Plaintiff's original and amended petitions allege two causes of action, however, only the second claim, set forth in plaintiff's amended petition, is now before us for decision. The dispute concerns the installation of 298 kitchen exhaust fans in 298 of the 300 housing units. Plaintiff says the installation of these fans was not called for in the contract, and seeks compensation for costs incurred due to the contracting officer's demand that the fans be installed. Both the contracting officer and the Armed Services Board of Contract Appeals (ASBCA) denied plaintiff's claim (ASBCA No. 7961, 1963 B.C.A. ¶ 3725) on the ground that installation of the fans was a part of the contract. The case is now before us on cross-motions for summary judgment. We have concluded that plaintiff is entitled to recover.
 
 
 2
 This contract was for the construction of 149 duplex buildings (containing 298 housing units) and two separate one unit buildings at Mountain Home Air Force Base, Idaho. There were six basic types of buildings, as follows:
 
 
 3
 Number
 Building Type of units Description

 1-A & 1-B __________ 116 Airman, 3-Bedroom, Single-story,
 Duplex.
 2-A ________________ 68 Airman & Officers, 4-Bedroom,
 Two-story, Duplex.
 3-A & 3-B __________ 72 Officers, 3-Bedroom, Single-story,
 Duplex.
 4-A, 4-B, & 4-C ____ 36 Officers, 3-Bedroom, Single-story,
 Duplex.
 5-A ________________ 6 Officers, 4-Bedroom, Two-story,
 Duplex.
 6-A & 6-B __________ 2 Colonels, 4-Bedroom, Single-story,
 Single unit.
 
 
 4
 As can be seen by this list, 298 of the 300 units were in duplex type buildings. The specifications called for installation of the kitchen exhaust fans where shown on the contract drawings. Drawings numbers 72-77 related to all the buildings (types 1-A through 6-B), and picture kitchen exhaust fans. But drawings 72-76, covering the 298 duplex type units (types 1-A through 5-A), contained the following notation:
 
 
 5
 NOTE: KITCHEN EXHAUST FANS, DUCT WORK & GRILLE TO BE UNDER ALTERNATE BID
 
 
 6
 Drawing 77, for the two single-unit buildings designed for the colonels, did not contain this notation.
 
 
 7
 Under a government contract like the present one, additive alternates are bid separately, and the government has the option of selecting any or all of the alternate items to be included in the contract work. In Section C of the present specifications, 19 alternates were listed, none of which included a kitchen exhaust fan. Of these 19, the defendant ultimately selected 12 for inclusion in the contract work. Plaintiff interpreted this lack of an alternate covering a kitchen exhaust fan to mean that the government did not desire the fans in the 298 duplex units, but only wanted them in the two more expensive units designed for the colonels. Based on this interpretation, plaintiff included in its bid price the cost of only two kitchen fans, and in fact, constructed the 300 units, installing only two kitchen fans (in units 6-A and 6-B). The contracting officer concluded that the contract called for fans in all 300 units, and ordered plaintiff to proceed with installation. This the plaintiff did, and requested additional consideration for the work. On November 29, 1961, the contracting officer denied plaintiff's request. This decision was appealed to the ASBCA, which denied the appeal. Plaintiff is now before us alleging that the decision of the ASBCA is arbitrary and is not supported by substantial evidence. Plaintiff says his interpretation of the contract was reasonable. Defendant, of course, says the decision of the ASBCA is neither arbitrary nor capricious, and is supported by substantial evidence, and that, therefore, under the Wunderlich Act, 41 U.S.C. §§ 321-322 (1964), the decision is final and conclusive.
 
 
 8
 Defendant justifies its inadvertent failure to remove the troublesome notation from the drawings by citing Paragraph 4 of the Invitation for Bids, which stated:
 
 
 9
 * * * Should the bidder find discrepancies in, or omissions from, such Drawings and Specifications or other documents attached hereto, or should he be in doubt as to their meaning, he should at once notify the Contracting Officer, Mountain Home Air Force Base, Idaho and obtain clarification prior to submitting a bid. * * *
 
 
 10
 This general language was repeated in Paragraph 2(d) of the General Provisions of the contract. Therefore, says defendant, plaintiff had the burden of clarifying this discrepancy, and having failed to do so, the government is under no obligation to pay for the fans.
 
 
 11
 Supplementing this argument, the goverment cites Paragraph 2(c) of the General Provisions of the contract, which states, "In case of difference between drawings and specifications, the specifications shall govern." Since the specifications called for fans "where shown," and the drawings showed fans, the government says it was not reasonable for plaintiff to rely on the notation subjecting the fans to an alternate bid, and that the specifications should govern.
 
 
 12
 The plaintiff says that in any event the contract documents were ambiguous. We agree. This ambiguity will be apparent in the following paragraphs of this opinion.
 
 
 13
 Thus, the parties have framed the two issues in this case, which must be answered consecutively. See L. Rosenman Corp. v. United States, 182 Ct.Cl. 586, 590, 390 F.2d 711, 713 (1968). The first issue is whether the discrepancy, omission or ambiguity was drastic, glaring or patent. Beacon Constr. Co. v. United States, 161 C.Cl. 1, 314 F.2d 501 (1963); WPC Enterprises, Inc. v. United States, 163 Ct.Cl. 1, 323 F.2d 874 (1963). If this issue is answered in the negative, we must reach the second issue, whether plaintiff's interpretation of the ambiguous provisions was reasonable. WPC Enterprises, Inc., supra; Gorn Corporation v. United States, 191 Ct.Cl. ___, 424 F.2d 588 (April 1970).
 
 
 14
 Considering the first issue, there was in actuality a discrepancy on the face of this contract between the specifications, the drawings with the notation, and the list of alternates. Kitchen exhaust fans were to be installed "where shown," yet the notation on the drawings said fans were to be bid as an alternate. Then there was no alternate for a kitchen exhaust fan. But this is not the kind of "glaring" discrepancy that we have said must exist before a contractor is required to shoulder the burden of seeking clarification of the government's ambiguous specifications from a contracting officer. In Beacon Constr. Co., supra, we found that something was "gravely askew" with the contract papers. The discrepancy there was so manifest that this court charged the contractor with knowledge of it. Therefore, we held that, "If the bidder fails to resort to the remedy proffered by the Government, a patent and glaring discrepancy * * * should be taken against him * * *." [Id. 161 Ct.Cl. at 7, 314 F.2d at 504.]
 
 
 15
 But the court was careful to point out that not all ambiguities were to be held against the bidder, even in the presence of a clause in the Invitation for Bids such as the one presently before us, requiring the bidder to obtain clarification from the contracting officer. We said in Beacon, supra:
 
 
 16
 * * * We do not mean to rule that, under such contract provisions, the contractor must at his peril remove any possible ambiguity prior to bidding; what we do hold is that, when he is presented with an obvious omission, inconsistency, or discrepancy of significance, he must consult the Government's representatives if he intends to bridge the crevasse in his own favor. * * * [Emphasis supplied.] [Id. at 7, 314 F.2d at 504.]
 
 
 17
 We were faced with another "study in the toils of ambiguity" in WPC Enterprises, Inc., supra. In that case, neither the plaintiff's nor the government's interpretation of the ambiguous provision appeared "[T]o rest on an obvious error in drafting, a gross discrepancy, or an inadvertent but glaring gap; * * *." [Emphasis supplied.] [Id. 163 Ct.Cl. at 6, 323 F.2d at 876.] Therefore, we held that the plaintiff was not under a duty to seek clarification from a government contracting official.
 
 
 18
 The distinction between these two cases should be clearly stated and understood. In Beacon, the significance and obviousness of the ambiguity placed on the plaintiff a duty to have the provisions clarified. Yet, in WPC Enterprises, Inc., supra, no such duty was found to exist, due to the subtleness of the discrepancy. This distinction is maintained whether or not the Invitation for Bids states that the contractor must seek clarification of all ambiguous specifications and drawings. The government cannot make a contractor the insurer of all government mistakes. The duties imposed on a contractor were succinctly stated in Blount Bros. Constr. Co. v. United States, 171 Ct.Cl. 478, 496, 346 F.2d 962, 973 (1965):
 
 
 19
 * * * They are obligated to bring to the Government's attention major discrepancies or errors which they detect in the specifications or drawings, or else fail to do so at their peril. But they are not expected to exercise clairvoyance in spotting hidden ambiguities in the bid documents, * * *. [Emphasis supplied.]
 
 
 20
 The ambiguity in the present contract simply does not rise to the standard we have set out in WPC Enterprises, Inc., Beacon Constr. Co., Blount Bros. Constr. Co., and other cases. It was neither glaring nor substantial nor patently obvious. Its insignificance is noted by comparing the total contract price of $4,918,600 to the amount plaintiff alleges is due him, $19,764. Although this is certainly not the sole determinative factor in leading us to our conclusion, it is illustrative of the overall unimportance of this one item, which is less than half of one percent of the total contract price. Therefore, on the first issue, we conclude that the discrepancy was not such a glaring or substantial one as would impose upon plaintiff the duty to seek clarification from the government.
 
 
 21
 We now consider the second issue. Was plaintiff's interpretation of the ambiguity reasonable? We have concluded that it was manifestly so. Plaintiff evaluated the contract documents as a whole, considered the notation on the drawings, the lack of an alternate covering kitchen exhaust fans, and the fact that the only two homes with fans in the drawings (and no notation excepting them) were the more deluxe homes designed for colonels. His interpretation of these provisions was that the government did not intend to have kitchen exhaust fans in the other 298 housing units. This was certainly a reasonable interpretation. Rather than assuming the government had made an error in drawing the specifications, plaintiff reasoned that the government had set out exactly what it wanted. This interpretation is within the "zone of reasonableness" we described in WPC Enterprises, Inc., supra, and, therefore, brings into play the rule set out in Blount Bros. Constr. Co., supra, 171 Ct.Cl. at 496, 497, 346 F.2d at 973, that:
 
 
 22
 * * * [Contractors] are protected if they innocently construe in their own favor an ambiguity equally susceptible to another construction, for as in Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390, 418 (1947), the basic precept is that ambiguities in contracts drawn by the Government are construed against the drafter. * * *
 
 
 23
 Plaintiff's interpretation of this ambiguity was reasonable, and he is therefore entitled to be reimbursed for the costs incurred in the installation of the 298 kitchen exhaust fans. The interpretation of the meaning of a contract is a question of law to be determined by the court, and the court is not bound by a decision of the Board with respect thereto. Bailey Specialized Bldgs., Inc. v. United States, 186 Ct.Cl. 71, 81, 404 F.2d 355, 360 (1968); Sundstrand Turbo v. United States, 182 Ct.Cl. 31, 40, 389 F.2d 406, 411 (1968). We conclude that the decision of the ASBCA upholding the contracting officer's determination and interpreting the contract was wrong as a matter of law. Therefore, plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied. Judgment is entered for plaintiff with the case remanded to the ASBCA to determine the amount of plaintiff's recovery for costs incurred due to defendant's requirement that kitchen fans be installed in the 298 duplex-type housing units. Proceedings in the case in this court are hereby suspended for a period of 120 days from this date for such Board determination, and the case is returned to the Board for this purpose. The plaintiff will comply with Rule 167 of the court. Upon the conclusion of the proceedings of the Board, the plaintiff will report the result to the court and the parties will take further action for the final disposition of the case in this court.
 
 
 
 Notes:
 
 
 [1]
 Plaintiff, Mountain Home Contractors, is a joint venture, consisting of Arthur A. Danekas, an individual, W. G. Ellis, an individual, John J. Martin, an individual, and Sea View Lumber Co., Inc., a California corporation