**ZINGER CONSTRUCTION CO., INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 86–1180.**

United States Court of Appeals, Federal Circuit.

Dec. 18, 1986.

James V. Joy, Jr., of Bridgeport, Conn., for appellant.

Lynn Bush, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee. With her on brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Douglas Knowles, Office of Counsel, U.S. Army Corps of Engineers, of counsel.

Before MARKEY, Chief Judge, MILLER, Senior Circuit Judge, and BISSELL, Circuit Judge.

JACK R. MILLER, Senior Circuit Judge.

This appeal is from a decision of the Armed Services Board of Contract Appeals ("board"), Docket No. 26331, affirming the denial of appellant's request for an equitable adjustment. We affirm.

## BACKGROUND

In 1980, Zinger Construction Company ("Zinger") was awarded Contract No. DACA 31–80–C–0110 for the installation of electric duct heaters in a dehumidifier system at the Tobyhanna Army Depot in Pennsylvania. Under the contract, Zinger was required to move existing fan units and steam coils in the dehumidifier ducts approximately three feet forward and to install new electric heaters downstream from the relocated steam coils and fans. The purpose of the contract was to provide the option of electric heat during the summer months while retaining the option of steam heat (provided by the steam coils) during the winter.

After installing the electric heaters and relocating the existing fan units and steam coils, Zinger was directed by the contracting officer to reconnect the steam coils and fans to the electric control box. Zinger performed the work under protest, asserting that it was not required to reconnect the control wires. Because the existing wires would not reach the relocated equipment, a new junction box and connecting wires had to be installed. Zinger filed a claim for an equitable adjustment of $14,891, but the contracting officer denied the claim.

On appeal to the board, Zinger argued that the contract was a "design contract," not a "performance contract," and that Zinger was entitled to rely exclusively on the drawings and detailed specifications. Because the disputed wiring was not depicted in the drawings or described in detail in the specifications, it was argued that reconnection of the control wires was not a part of the contract.

The board concluded that the contract required that the completed system be fully reconnected and operational. Alternatively, the board found that to the extent the disputed wiring was not depicted or described in detail, a reasonable contractor would have recognized its absence in the plans and would have been obligated to inquire about the extent of work to be performed. Because Zinger had not inquired and had failed to examine existing wiring during pre-bid inspection, the board concluded that Zinger had assumed the risk that its interpretation of the contract was incorrect.

Zinger argues that the board erred in concluding that the disputed work was required and also asserts that there was no patent ambiguity or omission in the drawings such that Zinger was obligated to inquire about the scope of work to be performed. It reasserts that the contract in question was a design contract and that the omission of detail in the drawings and specifications clearly indicated that reconnection of the control wiring was not required.

## OPINION

Our review of board decisions is governed by section 10(b) of the Contract Disputes Act of 1978, 41 U.S.C. § 609(b) (1982). Questions of law resolved by the board are neither final nor binding on the court, but findings of fact made by the board are final and conclusive unless arbitrary, capricious or unsupported by substantial evidence. *American Electronic Laboratories, Inc. v. United States*, 774 F.2d 1110, 1112 (Fed.Cir.1985).

The board found that a reasonable contractor would have expected to reconnect the control wiring and concluded that the contract, read as a whole, required that the completed system be operational. We are satisfied that the board's finding was neither arbitrary nor capricious and was based on substantial evidence; further, that its conclusion was reasonable. The record includes the testimony of the project engineer, who stated that the equipment had to be reconnected for the system to be fully operational. Moreover, paragraph 11.3.6 of the contract requires the contractor to install and electrically connect the duct heaters "in such a manner that ... existing automatic control is functionally and operationally assured...."

Zinger's argument, that the subject contract is a "design contract," entitling it to rely solely on the drawings and detailed specifications, is misguided. On occasion the labels "design specification" and "performance specification" have been used to connote the degree to which the government has prescribed certain details of performance on which the contractor could rely. *See, J.L. Simmons Company v. United States*, 188 Ct.Cl. 684, 689, 412 F.2d 1360, 1362 (1969); *see also, Ordnance Research, Inc. v. United States*, 221 Ct.Cl. 641, 670, 609 F.2d 462, 479 (1979) (performance is established where contractor followed the methods and utilized the materials prescribed in specifications). However, those labels do not independently create, limit, or remove a contractor's obligations. Contracts are viewed in their entirety and given the meaning imputed to a "reasonably intelligent contractor" acquainted with the involved circumstances, *J.B. Williams Company v. United States*, 196 Ct.Cl. 491, 507, 450 F.2d 1379, 1388 (1971); *Holgar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 388, 351 F.2d 972, 975 (1965), regardless of whether labelled "design," "performance," or both.

Accordingly, the decision of the board is affirmed.

AFFIRMED.