**FRU–CON CONSTRUCTION
CORPORATION,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–43C.

United States Court of Federal Claims.

Oct. 30, 1998.

Val S. McWhorter, Vienna, VA, for plaintiff. Mark E. Hanson and Claire E. Kresse, Smith, Pachter, McWhorter & D'Ambrosio, P.L.C., of counsel.

Sean C. Griffin, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Rian Hancks, Rock Island District Army Corps of Engineers, Rock Island, IL, of counsel.

### ORDER

MILLER, Judge.

On October 28, 1998, argument was held on defendant's motion for summary judgment upon Fru–Con Construction Corporation's ("plaintiff") overblasting claim, count 16 of plaintiff's First Amended Complaint.

In its motion filed incident to trial, defendant contends that plaintiff cannot impose an implied warranty upon the Government, in this case through the Department of the Army, Rock Island District Corps of Engineers (the "Corps"), for damages resulting from overblasting because the Government's specifications related to blasting were of the performance and not the design type. In addition to refuting defendant's attempt to undercut its defective specifications claim, plaintiff pressed a new theory of recovery in its opposition papers, to wit, that if the Government specifies alternative methods of performance, an implied warranty arises that the desired results can be achieved employing either method. Defendant's motion and the propriety of plaintiff's nascent theory will be addressed in turn.

## DISCUSSION

Summary judgment is appropriate when no genuine disputes exist as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed.Cir.1987). As the Federal Circuit has explained, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact," but, rather, the moving party need only show that "there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). After the moving party has met its burden, the opposing party "must proffer countering evidence sufficient to create a genuine factual dispute." *Id.* at 1562. A fact is considered material if it would affect the outcome of the case. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Any inferences to be drawn from the underlying facts must be construed in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir. 1985).

1. *Plaintiff's overblasting claim*

In *J.L. Simmons Co. v. United States,* 188 Ct.Cl. 684, 412 F.2d 1360, 1362 (1969), the Court of Claims defined and clarified the distinction between design specifications and performance specifications.

> [Design specifications] set forth in precise detail the materials to be employed and the manner in which the work [is] to be performed, and [the contractor is] not privileged to deviate therefrom, but [is] required to follow them as one would a road map. In contrast, typical 'performance' type specifications set forth an objective or standard to be achieved, and the successful bidder is expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and as-

suming a corresponding responsibility for that selection.

An implied warranty is imported with respect to design specifications, such that compliance with the specifications will render an adequate outcome. *See United States v. Spearin*, 248 U.S. 132, 136–37, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918) (explaining that where Government prescribes character, dimensions, and location of sewer, implied warranty attaches if specifications followed, sewer will be adequate); *Blake Constr. Co. v. United States*, 987 F.2d 743, 745 (Fed.Cir. 1993) (quoting *Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1582 (Fed.Cir. 1987)) (" 'Detailed design specifications contain an implied warranty that if they are followed, an acceptable result will be produced.' "); *Sickels v. United States*, 1 Ct.Cl. 214, 215–17 (1865) (explaining that where Government selects plan and site for erection of lighthouse and construction is terminated after learning construction site is composed of quicksand, contractor may recover for work completed). In contrast, performance specifications carry no such warranty because of the broader discretion afforded the contractor in their implementation.

■ Recent opinions of the Federal Circuit have embraced the general definitions enunciated in *J.L. Simmons*, yet caution that "the distinction between design specifications and performance specifications is not absolute" and that courts should understand that "[i]t is the obligation imposed by the specification which determines the extent to which it is a "performance" or "design," not the other way around." *Blake*, 987 F.2d at 746; *see also Zinger Constr. Co. v. United States*, 807 F.2d 979, 981 (Fed.Cir.1986) (explaining that labels "performance" or "design" do not independently create, limit or relieve contractor's obligations, but, rather, that contract should be viewed in its entirety). Reluctance to adhere to the rigid constructs associated with each type of specification recognizes that contract language may not always fall squarely within the "design" category or the "performance" category and, moreover, that contracts may exhibit both design and performance characteristics. *See Blake*, 987 F.2d at 746; *Zinger*, 807 F.2d at 981; *Dewey Elecs. Corp. v. United States*, 803 F.2d 650, 658 (Fed.Cir.1986) (determining that specifications placed "differing burdens on the contractor" regarding compliance with mechanical as opposed to electrical components). Thus, the courts have directed their attention to the level of discretion inhering within a given specification; discretion serves as the touchstone for assessing the extent of implied warranty and attendant liability. *See Blake*, 987 F.2d at 745–46 (considering whether contractor had discretion to deviate from specifications); *Stuyvesant Dredging*, 834 F.2d at 1582 (explaining that design specifications permit no deviations, whenever performance specifications afford contractor discretion to determine how results shall be achieved).

■ Analysis of a defective specification claim is not limited to assessment of the element of discretion. A contractor, in addition to demonstrating that the subject specifications do not permit meaningful discretion, must also show that the defective specifications are the cause of the injury. In *Gulf Western Precision Engineering Co. v. United States*, 211 Ct.Cl. 207, 218, 543 F.2d 125, 130–31 (1976), the United States Court of Claims held that a contractor could not recover extra costs that directly and proximately resulted from the contractor's substituting its own fabrication techniques for those suggested by the Government. The court reasoned that, if the Government is responsible for losses due to its own defective specifications, the converse should apply to the contractor. *Accord J.A. Maurer, Inc. v. United States*, 202 Ct.Cl. 813, 827, 485 F.2d 588, 595 (1973) ("[I]f the contractor, from a stance of superior expertise, asks for and obtains leave to perform according to methods defined and stated by him, he impliedly warrants that he is able to overcome the technical difficulties inherent in the project, whatever they are.").

By its motion for summary judgment, defendant asserts that plaintiff may not recover for expenses associated with overblasting because, pursuant to the contract, plaintiff designed the blasting plan. It is undisputed that plaintiff specified "the diameter, depth, and spacing of the drilled holes; the size and

location of charges; the blasting sequence," and "personnel who [would] be working with explosives." Def's Br. filed Sept. 25, 1998, at 26. Defendant's briefs cite deposition testimony of plaintiff's president and blasting expert acknowledging that plaintiff bore the responsibility to design the blasting plan and that the Corps provided only a minimum amount of information and guidance to plaintiff in the preparation of that plan. Because the Corps furnished what plaintiff's blasting expert considers "a very general spec," Deposition of Calvin Konya, Sept. 4, 1998, at 246, an implied warranty did not attach to the specifications.

In its opposition plaintiff urges that "profound disputes as to material fact," Plf's Br. filed Oct. 9, 1998, at 7, are unresolved by defendant's motion. Among the more compelling, plaintiff contends that "the concrete removal specifications in fact provide numerous detailed design requirements establishing that the specifications are 'design-type,'" and that "the detailed design requirements of the concrete removal specification left [plaintiff] virtually no discretion as to how to achieve the required removal of concrete." *Id.* at 2. According to plaintiff, the Corps' concrete removal specifications and bid drawings set forth all of the required elements of plaintiff's blast plan and "set out in detail all other aspects related to blasting, such as saw cutting, the amount of concrete to be removed, the height, width and depth of removal, and the length, size and depth of embedment of all anchor and reinforcing steel associated with permanent installation of the [floating mooring bits]." *Id.* at 8. Plaintiff relies on SECTION C–02075—CONCRETE REMOVAL, ¶ 3.2.1 to support its position:

Detailed Blasting Plan: A detailed blasting plan shall be submitted to the Contracting Officer for approval. The plan shall include, but not be limited to, the diameter, depth, and spacing of the drilled holes; the size and location of charges; the blasting sequence; method and location of handling, transporting, and storing explosives; monitoring plan and equipment; method for determining that all explosives have been expended and that the work site is clear before removal work resumes; and personnel who will be working with explosives. The plan shall consist of a narrative plus sketches which completely describe all blasting.

Based on the restrictive nature of this language, plaintiff asserts that its blasting plan constituted nothing more than a reflection of the detailed specifications prescribed by the Corps, concluding that the specifications were warranted.[1]

Consideration of the contract documents on which plaintiff bases its blasting claim reveals that the Corps' specifications cannot be synthesized into the sort of detailed "road-map" envisioned by the Federal Circuit in *J.L. Simmons.* Specifying the elements that a successful blasting plan should include does not so curtail discretion that a contractor has little, if any, opportunity for ingenuity. Plaintiff retained complete discretion in the development of the blasting plan, subject only to the review and approval of the Corps. It is undisputed that through its subcontractor, plaintiff determined the size, depth, and diameter of the holes, the size and location of the charges, and the blasting sequence and selected the explosives and related equipment. The Corps neither prescribed an exacting blasting procedure nor mandated the use of certain explosives or equipment. Thus, it is a fact that plaintiff determined how the blasting would be executed[2] and what explosives and materials would be employed.

---

1. Underlying plaintiff's brief is the veiled assertion that there arose an implied warranty of the blasting plan that the Corps reviewed and approved, but did not design. Notwithstanding the absence of controlling case law suggesting that approval of specifications by the Government gives rise to an implied warranty, section 3–01305, part 1, ¶ 2 of the contract provides that "[a]pproval [of submittals] by the Contracting Officer will not relieve the Contractor of the responsibility for any error which may exist, as the Contractor ... is responsible for the dimen-

sions and design of adequate connections, details and satisfactory construction of all work." This contract provision parallels *A & A Insulation Contractors, Inc.,* 92–2 B.C.A. (CCH) ¶ 24,829, at 123,881, ruling that the Government's approval of a submittal does not relieve the contractor of its contractual duties.

2. For example, in exercising its discretion, plaintiff's initial blasts employed 200 grain primacord; after viewing the extent of the spalling, plaintiff determined that 150 grain primacord, a less

The solicitation unambiguously assigns to the contractor the responsibility for designing and submitting a detailed blasting plan.[3] The uncontested facts indicate that plaintiff executed the plan and deviated from it when deemed necessary or appropriate. Although plaintiff strenuously asserts to the contrary, it is difficult to perceive the "profound disputes as to material facts" regarding any specifications promulgated by defendant that limited plaintiff's discretion in the design and implementation of the plan. The deposition testimony of plaintiff's blasting subcontractor reveals that the Corps had no input in the preparation of the blasting plan; in addition, plaintiff's project manager acknowledged that the Corps' specifications placed directly upon plaintiff responsibility for the design of the plan. These admissions belie the existence of a genuine dispute of material fact[4] as to whether a warranty of specifications can be imputed to defendant. To the extent such appellations are useful, the Corps' specifications related to blasting can only be considered performance type.

### 2. Warranty of alternative methods

Relying upon cases from the Court of Federal Claims and the various Boards of Contract Appeals, plaintiff, in its opposition brief and at argument, urges the court to adopt a theory of warranty attendant to the Government's specification of alternative methods of performance. Plaintiff asserts that "when the Government's specification, which sets forth two alternate methods for concrete removal, provides for alternate methods of performance, the 'contractor has a right to assume that either method is feasible and that either method will achieve the desired result without further investigation into its acceptability.'" Plf's Br. filed Oct. 9, 1998, at 10 (quoting *Bart Assocs.*, 96–2 B.C.A. (CCH) ¶ 28,479, at 142,235–4). Because plaintiff could not complete the concrete removal work without significant overblast and within the contractually mandated 60–day period, plaintiff contends that specification of the blasting method constitutes a breach of this warranty.

Defendant's apoplectic response to this argument in large part is attributable to the fact that this theory of recovery is legally distinct from any theory averred in plaintiff's complaint as originally filed or amended. Plaintiff now advances an argument that is founded on the assumption that it was impossible or commercially impracticable to perform the concrete removal by blasting without experiencing significant overbreak, or extending beyond the 60 days allotted for contract performance. On October 7, 1998, the court permitted plaintiff to amend its complaint to include a claim based on the existence of differing site conditions. Due to the imminence of trial, any further opportunity to amend was foreclosed by that order.

Even if plaintiff's theory were timely, the warranty of alternative methods as posited by plaintiff unduly extends the cases in which its application is appropriate. Plaintiff fails to cite a case that imposes warranty liability

powerful explosive, would be sufficient in subsequent blasts.

3. The only specification issued by the Corps that approaches design-type is that which relates to sawcutting. Plaintiff points out that "[t]he contract drawings specified the location, width, and depth of *all* sawcutting." Plf's Br. filed Oct. 9, 1998, at 5. However, plaintiff fails to explicate the ultimate consequence of these specifications, in particular, their role in the blasting plan or the extent to which any overblast and spalling could be attributed to sawcutting.

4. A dispute is present concerning whether the Corps' specifications are design or performance type, but it resides entirely within plaintiff's submissions. For example, plaintiff contends that "the [Government's] specifications included many precise design characteristics" and imposed "numerous design requirements." Plf's

Br. filed Oct. 9, 1998, at 17. Plaintiff's own blasting expert, Dr. Konya, testified at his deposition:

> [T]he contractor was given a minimum amount of information, a minimum amount of guidance. At the least I would have expected in the specifications to say perimeter holes should be drilled at certain distance, certain charge load, maybe have a much lighter loaded hole as the next hole in.... In other words, some types of guidance because this wasn't an unusual job.

Konya Dep. at 131–32. Although plaintiff's assertions cannot be reconciled with the testimony of Dr. Konya, plaintiff cannot instigate controversy with its own evidence to withstand a motion for summary judgment. *See Sohm v. United States*, 3 Cl.Ct. 74, 78 (1983).

upon the Government where execution of the contract could be satisfied pursuant to two alternative methods supported only by performance-type specifications. Rather, these cases contemplate impossibility or impracticability in the context of defective specifications or differing site conditions. *See Johns–Manville Corp. v. United States*, 13 Cl.Ct. 72, 118 (recognizing two representations in warranty: "first, that the specifications are accurate, and second, that the production of the item and any method of production specified will be feasible and that the finished product will be suitable if the design specifications are followed"), *vacated for lack of jurisdiction*, 855 F.2d 1571 (Fed.Cir.1988); *Bart Assocs., Inc.*, 96–2 B.C.A. (CCH) ¶ 28,479 (imputing warranty to Government for latently defective polymer insulators where government specification permitted contractor's use of either porcelain or polymer insulators);[5] *Guy F. Atkinson Co.*, 88–2 B.C.A. (CCH) ¶ 20,714, at 104,676 (allowing equitable adjustment upon concluding that government-mandated specification requiring contractor to maintain free moisture content of aggregate less than 5% to be commercially impracticable); *S & M—Traylor Bros.*, 78–2 B.C.A. (CCH) ¶ 13,495 (recognizing right to recovery for Government's defective drawings and design that required contractor to obtain item impossible to produce); *Southern Paving Corp.*, 77–2 B.C.A. (CCH) ¶ 12,813 (finding implied warranty pursuant to defective or impossible specification); *Thurmont Constr. Co.*, 69–1 B.C.A. (CCH) ¶ 7,602, at 35,308 (remanding for damages resulting from defective specification requiring contractor to procure item, listed in contract as "standard product" that had never been manufactured).

Although plaintiff accurately recites the proposition that "when the government provides alternate methods by which a project may be completed there is an implied warranty that either method will achieve the desired result," this is nothing more than a restatement of a legal principle of limited scope. *Neal & Co. v. United States*, 19 Cl.Ct. 463, 469 (1990). *Neal* stands for the modest proposition that the Government warrants a prescribed method of performance against impossibility or commercial impracticability resulting from a defective design specification. The warranty of alternative methods, as contemplated in these cases, should not be imposed if recovery is founded on a non-specific performance-type specification that affords significant latitude or discretion.[6] Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion for summary judgment on plaintiff's overblasting claim is granted.

2. Plaintiff is precluded from advancing any claim founded on the warranty of alternative methods.

---

5. The court does not overlook pertinence of the following language in *Bart Associates*:

> [The Government's] specifications offered alternative methods of performance, by porcelain insulators or polymer insulators. [The Government] contends that, nevertheless, the contractor was still required to determine that polymer insulators were acceptable. [The contractor] was not obligated to make such a preliminary determination, however, because there is an implied warranty as to the acceptability of each of the alternatives, even if·the specifications for polymer insulators are not design specifications.

96–2 B.C.A. (CCH) ¶ 28,479, at 142,235–7. Insofar as the Board recognized an implied warranty in situations where the subject specifications are not design specifications, the warranty imputed to the Government in *Bart Associates* resulted from the specification of an end-product, polymer insulators, within a broader performance-type specification. In the case at bar, plaintiff had discretion in the development and implementation of the blasting plan. The Corps neither required plaintiff to procure specific explosives or equipment nor commanded plaintiff to adhere to a detailed blasting procedure.

6. Although plaintiff may not introduce evidence to support its theories of legal impossibility or the warranty of alternative methods, this order does not foreclose plaintiff from contending that as a result of differing site conditions, performance was impossible or commercially impracticable.

3. The pretrial conference is rescheduled to 1:30 p.m. Tuesday, November 10, 1998, in the Howard T. Markey National Courts Building. Counsel for plaintiff shall furnish chambers with a courtesy copy of its November 9, 1998 pretrial filings.