**HENSEL PHELPS CONSTRUCTION CO., Appellant,**

v.

**The UNITED STATES, Appellee.**

No. 88–1545.

United States Court of Appeals, Federal Circuit.

Sept. 29, 1989.

John B. Hayes, Looney, Nichols, Johnson & Hayes, of Oklahoma City, Okl., submitted for appellant.

Catherine A. Christman, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., submitted for appellee. With her on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett, Asst. Director and Howard Lipper.

Before SMITH, Senior Circuit Judge,* NIES and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Hensel Phelps Construction Co. (Hensel Phelps) appeals the decision of the Armed Services Board of Contract Appeals, ASBCA No. 35767, 88-2 BCA (CCH) ¶ 20,701, denying its claim for an equitable adjustment in the amount of $100,983.00 on Contract No. DACA 56-87-C-0002. We reverse and remand.

*Background*

Hensel Phelps' contract with the United States, entered into on October 29, 1986,

was for the construction of a jet engine blade repair facility at Tinker Air Force Base, Oklahoma. The initial contract price was $33,617,000.00.

On December 4, 1986, Hensel Phelps requested a contract interpretation, pointing out that the specifications called for a minimum of 18 inches of non-expansive fill under the concrete floor slabs, whereas a note on the drawings called for 36 inches of non-expansive fill.[1] The contracting officer was advised that Hensel Phelps and its subcontractor, C. Watts Construction Company (Watts), had used the requirement of the specifications in calculating the bid instead of the conflicting drawing note requirement because the contract provided that the specifications control over the drawings. The pertinent clause, which is commonly referred to as the "order of precedence" clause, provides:

Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. *In case of difference between drawings and specifications, the specifications shall govern.* In case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing. Any adjustment by the Contractor without such a determination shall be at its own risk and expense.

Contract Clause No. 47, entitled "52.236-21 SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (Apr 1984)" (emphasis added).

The contracting officer directed that 36 inches of non-expansive fill should be placed under the concrete floor slabs as required by the drawings and Hensel Phelps and Watts proceeded as instructed. Thereafter Hensel Phelps timely submitted

---

* This case was heard prior to the time Senior Circuit Judge Smith took senior status on June 1, 1989.

1. The difference in the amount of the work is significant. According to the Board, "[t]he 18″ requirement would involve 9750 cu. yds of fill and 530 cu. yds of excavation. The 36″ requirement, on the other hand, would involve about 5000 cubic yards *more* of both fill and excavation." 88-2 BCA (CCH) ¶ 20,701, at 104,600-01.

a $100,983.00 claim, properly certified, for equitable adjustment in the contract price based on an asserted modification of contract terms. The claim was denied by the contracting officer.

The Board found that Watts, in preparing its subcontract bid to Hensel Phelps,

> recognized the clear conflict between the drawings and the specification. There was no way that the conflict could be resolved or harmonized. [Watts] relied on the "Order of Precedence" clause and prepared [its] bid based upon the 18 inches set out in the specification, rather than the 36 inches called for by the contract drawings.

88-2 BCA (CCH) ¶ 20,701, at 104,600. The Board also found that Hensel Phelps "relied upon Watts' bid in preparing its own bid which it submitted to the government on this contract."[2]

The Board concluded, however, that the decision of the United States Court of Claims in *Franchi Constr. Co. v. United States*, 609 F.2d 984 (Ct.Cl.1979), and the decision in *Shirley Contracting Corp.*, ASBCA No. 29028, 87-1 BCA (CCH) ¶ 19,389, applying the *Franchi* case, were controlling and precluded recovery by Hensel Phelps.

## OPINION

The Court of Claims has held that when the requirements of the specifications of a government contract conflict with the drawings and the contract contains an order of precedence clause, the specifications shall control as the order of precedence clause provides. *Franchi Constr. Co. v. United States*, 609 F.2d at 989-90; *William F. Klingensmith, Inc. v. United States*, 505 F.2d 1257, 1261 (Ct.Cl.1974).

The government argues, however, that *Franchi* limits the applicability of the order of precedence clause to situations in which the contractor was not aware of the discrepancy prior to bidding and notes that Hensel Phelps' subcontractor knew of the discrepancy between the specification and

the drawings before it submitted its bid. The Board accepted the government's position, stating that

> [i]t was clearly unreasonable for the appellant to presume that the Government intended to set out such blatantly conflicting requirements and leave it to the operation of the "boiler plate" clause to resolve and establish the Government's specific needs. In these circumstances, it was unreasonable for appellant to bid as it did, knowing as it must have, that a serious mistake had been made.

88-2 BCA (CCH) ¶ 20,701 at 104,602. Thus, the Board appeared to interpret *Franchi* as foreclosing reliance on an order of precedence clause whenever the contractor knows, or should know, of a discrepancy prior to bidding. *See also Shirley Contracting Corp.*, ASBCA No. 29028, 87-1 BCA (CCH) ¶ 19,389 (holding contractor should have sought clarification despite order of precedence clause when three of appellant's representatives knew of the difference between the specification and the drawing before bid). We disagree with the Board's holding and do not find that its interpretation is consistent with *Franchi*.

In *Franchi* the trial judge found that there was a patent discrepancy between the specifications and drawings but held that the order of precedence clause could be relied on to resolve the discrepancy. In his opinion the trial judge stated:

> The Government authored the order of precedence clause as a mechanism to automatically remove conflict between specifications and drawings by assigning preeminence to the former....
>
> The plaintiff is entitled to take the Government sponsored order of precedence clause at face value. Once its right to do so in the present situation is recognized, no conflict sufficient to occasion inquiry remains....

*Franchi Constr. Co. v. United States*, 609 F.2d at 989-90 (citation omitted). In appealing the trial judge's ruling, the defendant argued that the clause should not

---

**2.** Hensel Phelps apparently learned of the discrepancy when Watts was advised by a government inspector during construction that 36 inches of fill would be required.

apply when a discrepancy is patent. The Court of Claims said:

> We cannot in the circumstances say in face of the precedence clause, our characterization of a discrepancy as patent automatically triggers an obligation to report. The clause itself seems designed to excuse such reporting, instances where equity would intervene aside.

*Id.* at 986. As the court in *Franchi* also noted, a critical distinction is made in the order of precedence clause itself. Precedence applies only in the case of "discrepancies between specifications and drawings, while one in figures, drawings, or specifications, each by themselves, must be promptly reported...." *Id.*

■ The *Franchi* case, therefore, stands for the proposition that clarification must be sought where an internal discrepancy in the "figures, drawings, or specifications" is found, or should have been found, prior to bid, but that a discrepancy *between* the specifications and drawings, a matter covered by the order of precedence clause, will generally be resolved in the manner prescribed by that clause. We believe that this is the proper application of the order of precedence clause. Contractors should, as a general rule, be entitled to rely on the order of precedence clause and not be required to seek clarification of a putative inconsistency between the specifications and drawings. The order of precedence clause itself resolves that inconsistency. It is, after all, the government that is the author of this contract clause, as well as the specifications and drawings.

Despite this general rule, however, we recognize, as the *Franchi* court foresaw, that a strict application of the order of precedence clause in all situations where it literally applies could, under some circumstances, give rise to over-reaching. In *Franchi,* the court in *dictum* noted:

We would assume arguendo that a bidder, who noticed or should have noticed a serious mistake in the invitation or other of the contract documents, must divulge what he has or should have noticed to the government, and *will not in equity be allowed to profit by not doing so, as it would be an instance of overreaching.* That is not this case, whether the discrepancy be patent or latent. *Defendant does not accuse plaintiff of overreaching nor could it do so.*

*Id.* at 985–86 (emphasis added).

■ In this case there is no evidence of overreaching by Hensel Phelps or Watts. The findings of the Board demonstrate that Watts' price included only an amount sufficient to perform the specification requirement and that this price was incorporated into Hensel Phelps' bid price. Reliance was properly placed on the order of precedence clause to resolve a discrepancy between the specifications and the drawings and this resolution was reflected in the bid. When the government insisted on 36 inches of fill, rather than the 18 inches called for in the specifications, the contractor was required to perform more work than the contract required and more than its bid price contemplated. Consequently, on the record here neither Hensel Phelps nor Watts can be said to have profited or otherwise benefited by reliance on the order of precedence clause.[3]

In sum, we hold that an order of precedence clause may be relied on to resolve a discrepancy between the specifications and drawings even though the discrepancy is known to the contractor prior to bid or is patent. If the contractor is required to perform work in addition to that called for by application of the order of precedence clause, he may seek an *equitable* adjustment in the price of the contract for such work and, in that event, *equitable princi-*

---

**3.** Obviously equitable principles would not permit a contractor to submit a bid priced to include the additional work required by the drawings and then seek additional compensation based on an order of precedence clause argument when the government required the work called for in the drawings, rather than in the specifications, to be performed. This would be overreaching in that the contractor would, in effect, be seeking payment twice for the same work, i.e., the amount included in the bid price for such work and the extra compensation claimed for said work under the order of precedence clause argument.

*ples* would apply to prevent overreaching or profiteering.

The decision of the Board is reversed and the case remanded for a determination of an equitable adjustment.

## COSTS

Costs to Hensel Phelps.

REVERSED AND REMANDED.