**APOLLO SHEET METAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 98–719C.**

United States Court of Federal Claims.

June 16, 1999.

John S. Stewart, Portland, OR, for plaintiff. Jan D. Sokol Stewart, Sokol & Gray LLC, of counsel.

Aileen M. Bell, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for defendant. Kathleen Marion Carr, Department of the Interior, of counsel.

### ORDER

MILLER, Judge.

This matter is before the court on defendant's motion to dismiss. The issues under consideration are (1) whether certain maps drawn by the government and included with in a permit application constitute design specifications, and (2) if so, whether an order of precedence clause negates the attendant implied warranty of suitability. Argument is deemed unnecessary.

### FACTS

The following facts are not disputed. On June 26, 1996, the U.S. Department of Interior's Bureau of Reclamation (the "BOR") awarded a contract to Apollo Sheet Metal, Inc. ("plaintiff"), for construction of the Stanfield Relift Pumping Plant. The purpose of the plant is to meet the irrigation needs of the Stanfield Irrigation District.

On July 15, 1996, the BOR directed plaintiff to proceed with construction of the facilities. The contract required plaintiff to remove and control water from the construction site and "handle all flows from natural drainage." Although the BOR made no representation as to the precise amount of water that plaintiff might encounter, it did warn plaintiff about possible runoff due to precipitation, but specifically noted that the levels for both ground water and flows were usually lowest from November to February.

Once construction began, plaintiff laid a 24-inch diameter pipe to divert water from the construction site. On January 1, 1997, warm weather precipitated a snowmelt which, in turn, flooded the construction site causing significant damage. Plaintiff submitted a time and material change order on January 2, 1997, seeking to recoup the cost of repairs. After the BOR denied this request on January 21, 1997, plaintiff submitted a claim on May 16, 1997, to the contracting officer for $96,461.00, the cost to repair the damages from the January 1, 1997 flood. On October 14, 1997, the contracting officer issued a final decision denying plaintiff's claim.

Plaintiff thereafter filed its complaint seeking to recover $96,461.00. Plaintiff alleges that it used the 24-inch pipe in accordance with the BOR's design specifications. Plaintiff relied upon "drawings" produced by the BOR, which indicated that the pipes in question were to be 24 inches in diameter. As a result, plaintiff asserts that the BOR is liable

for damages due to its breach of an implied warranty of suitability.

Defendant agrees that if the drawings constituted design specifications, the BOR would be liable. However, because "conceptual drawing[s]" were involved, Def's Br. filed Jan. 26, 1999, at 4, 13, plaintiff was not required to perform in compliance with the information included in the drawings. According to defendant, a controlling performance specification gave plaintiff full discretion to select the pipe's size; consequently, the BOR bears no responsibility for the pipe's inadequacy.

## DISCUSSION

### 1. Standards for motion to dismiss

RCFC 12(b)(4) governing motions to dismiss for failure to state a claim upon which relief can be granted authorizes dismissal when, despite the truth of plaintiff's allegations, no claim for which relief may be granted remains as a matter of law. Accordingly, the Supreme Court has held that dismissal is appropriate whenever "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court shall make all reasonable inferences in favor of the nonmoving party. *See Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991) (holding that with motions to dismiss, court "must ... indulge in all reasonable inferences in favor of the nonmovant"). Any favorable inferences made, however, are to be based solely upon allegations of fact and not conclusions or opinions of law. The movant thus bears a heavy burden in showing that plaintiff's claim lacks any merit.

### 2. The drawings as design specifications

The Clean Water Act, 33 U.S.C. § 403 (1994), provides that "[t]he creation of any obstruction ... to the navigable capacity of any of the waters of the United States is prohibited ... except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army ... prior to beginning the same." The Secretary of the Army authorizes such projects by issuing a permit. *See* 33 U.S.C. § 404 (1994). The BOR assumed the responsibility of applying for and acquiring all necessary licenses and permits. Included in the BOR's permit application were two drawings indicating that a 24-inch pipe was to be used to "dewater" the construction site. A permit subsequently was granted as a result of this application.

In constructing the dewatering system, plaintiff maintains that it relied upon the permit application drawings to install the 24-inch diameter pipe, because it believed the drawings to be design specifications. Design specifications "describe in precise detail the materials to be employed and the manner in which the work is to be performed. They afford no discretion to the contractor, which is required to follow them as one would a roadmap." *Blake Constr. Co., Inc. v. United States*, 987 F.2d 743, 745 (Fed.Cir.1993) (quoting *J.L. Simmons Co. v. United States*, 188 Ct.Cl. 684, 689, 412 F.2d 1360, 1362 (1969)). In contrast, performance specifications "set forth an objective or standard to be achieved [by the contractor who is] expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection." *Blake Constr.*, 987 F.2d at 745 (internal quotations and citations omitted). If the drawings are deemed to be design specifications, then liability for any inherent defect in design would rest with the BOR. *See Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1582 (Fed.Cir.1987) (citing *United States v. Spearin*, 248 U.S. 132, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918)). If, however, the drawings were merely performance specifications, then plaintiff assumed the risk for the 24-inch pipe. *See Blake Constr.*, 987 F.2d at 745 (citing *J.L. Simmons*, 188 Ct.Cl. at 689, 412 F.2d at 1362).

To determine whether a specification is a design specification or a performance specification, the court is to look to "the obligations imposed by the specification." *Dillingham Construction, N.A., Inc. v. United States*, 33 Fed.Cl. 495, 501 (citing *Blake Constr.*, 987 F.2d at 746), aff'd, 91 F.3d 167 (Fed.Cir.1996) (Table). In *Dillingham* the

Veterans Administration contracted for the design and construction of an outpatient clinic. The cover page of the solicitation for the contract stated that the Veterans Administration was to provide the contractor with the "final construction plans and specifications" regarding the clinic's electrical wiring. *Dillingham*, 33 Fed.Cl. at 497. One of these specifications was an electrical specification that explicitly required the contractor to use raceways to house the electrical wiring. Rather than using the raceways as directed, however, the contractor used metal clad cable, reasoning that the contract afforded it wide discretion to choose the type of electrical housing. The court disagreed. Given the high degree of specificity with regard to the type of housing that was to be used, the court concluded that the electrical specifications constituted design specifications, stating that "[t]o determine what obligations . . . specifications impose, the court must look to the specifications themselves." *Id.* at 501 (citing *Blake Constr.*, 987 F.2d at 746).

■ As in *Dillingham*, the specifications within the BOR's drawings are extremely detailed. In addition to noting the exact location and size of the 24-inch diversion pipe, the drawings also indicate that a 42-inch pipe was to be located at the bottom of an excavation exactly 6 feet wide and 8.2 feet below the 24-inch pipe. Also included were elevation levels indicating that all water within the excavation area was to be pumped down to precisely 587 feet above sea level. Although no textual assertion within the solicitation explicitly required plaintiff to utilize a 24-inch diameter diversion pipe, the drawings, which indicate as much, nevertheless were incorporated by reference into the BOR's solicitation documents.* What is more, copies of the permit were given to the

plaintiff upon the contract's award, according to which specifications plaintiff was required to comply: "The Contractor's operations *shall* conform to the terms and conditions of [the] permit." (Emphasis added.)

This court has previously held that where "contract drawings specif[y] the location, width, and depth" of certain elements, such drawings approach design specifications. *Fru-Con Constr. Corp. v. United States*, 42 Fed.Cl. 94, 98 at n. 3 (1998). Similarly, "there can be no doubt that the location, height, and slope of [a structure], . . . and the size, materials and location of . . . structures were more design than performance specifications." *Hardwick Bros. Co. II v. United States*, 36 Fed.Cl. 347, 411 (1996), *aff'd*, 168 F.3d 1322 (1998) (Table), *cert. denied*, —— U.S. ——, 119 S.Ct. 1754, 143 L.Ed.2d 787 (1999). Thus, the BOR's drawings are more than just "conceptual" in nature. Given that the drawings are precisely detailed; that the permit was obtained, in part, based on the basis of the drawings; that plaintiff was required to perform the contract in accordance with the permit; and that plaintiff should be accorded all other factual inferences for purposes of this motion, defendant has not shown that the 24-inch pipe specification in the drawing is other than a design specification.

### 3. Order of precedence clause

■ The order of precedence clause is to be invoked "when the requirements of the specifications of a government contract conflict with the drawings." *Hensel Phelps Constr. Co. v. United States*, 886 F.2d 1296, 1298 (Fed.Cir.1989). Generally, such conflicts regard precise, and directly competing, contract provisions. *See, e.g., id.* at 1297 (invoking order of precedence clause to de-

---

* Section 1.5.4.b(1) of the solicitation reads, as follows: "A copy of the approved Army Corps of Engineers 404 permit and the Oregon Division of State Lands Removal/Fill Permit application (pending approval) are included in Amendment No. 002." Defendant, however, asserts in its reply brief that the drawings were specifically deleted from the solicitation and that plaintiff "had no obligation to follow [them]." Def's Br. filed Mar. 30, 1999, at 7. Defendant cites to a highlighted "change" in the Amendment of Solicitation purportedly showing that "the 13 page

permit application, including the drawing[s], w[ere] specifically deleted." Inasmuch as the documents appended to defendant's reply brief do not establish facially that the drawings actually were deleted, that fact cannot be assumed for purposes of defendant's motion. This gap in the record is curious in light of the fact that, although defendant makes much about the deletion of the drawings from the permit application, defendant's initial brief did not address this alleged deletion.

cide whether contract specification required 18 inches or 36 inches of fill to be placed under concrete floor); *Sperry Corp. v. United States,* 845 F.2d 965, 967 (Fed.Cir.1988) (discussing applicability of order of precedence clause to decide whether option contract began on one date or another); *Franchi Constr. Co., Inc. v. United States,* 221 Ct.Cl. 796, 799, 609 F.2d 984, 986 (1979) (invoking order of precedence clause to decide whether "tile was to abut ... partitions after they were erected on the concrete [ ] floor or was to be laid first, with the partitions placed on top of it"); *Hydrothermal Energy Corp. v. United States,* 26 Cl.Ct. 7, 11 (1992) (discussing applicability of order of precedence clause to decide whether defendant was to pay $935,300, or $958,969). One thus looks to the order of precedence clause to resolve inconsistencies between specific terms in competing clauses of like provision—for example, where two provisions conflict regarding the length, width, height, placement, time, duration, or other such particularized specifications. In metaphorical terms, an order of precedence clause is invoked to resolve inconsistencies between apples and apples, one green, the other red.

■ Defendant asserts that the performance specification at section 2.1.1(c) of the contract requiring plaintiff to construct a water removal system according to "sound engineering principles and modern practice" is inconsistent with the directions in the drawings. Defendant therefore concludes that the performance specification is controlling. In the instant case, however, the alleged inconsistency is not between apples and apples, but between apples and oranges. Specifically, the inconsistency is manifested between a performance specification and a design specification, *i.e.,* whether plaintiff was to decide the appropriate diameter of the diversion pipe, or whether plaintiff was required to lay a pipe 24 inches in diameter. Such an inconsistency is not resolvable by reference to the order of precedence clause because it does not seek to resolve questions regarding the nature of a specification— whether the specification is design or performance. A specification is a design or performance specification depending upon "obligations imposed by the specification ...."

*Blake Constr.,* 987 F.2d at 746. Therefore, to utilize the order of precedence clause to resolve issues regarding the nature of a specification is inappropriate. Insofar as plaintiff lacked discretion to depart from the design specification, the fact that another contractual provision required plaintiff to use its discretion in constructing a dewatering system is of little import.

To invoke an order of precedence clause to resolve whether a performance specification is controlling over a design specification necessarily would render a part of the contract meaningless. If a performance specification trumps a design specification, then the contractor's requirement to follow the design specification immediately is nullified, in which case the design specification loses its significance. Consequently, invoking an order of precedence clause in a situation such as this would "violate[ ] one of the cardinal principles of contract interpretation, that an interpretation which gives reasonable meaning to all parts of an instrument is preferred to one which leaves a portion of it useless, inoperative, void, meaningless, or superfluous." *Blake Constr. Co., Inc. v. United States,* 220 Ct.Cl. 56, 60, 597 F.2d 1357, 1359 (1979) (citation omitted); *accord Blake Constr.,* 987 F.2d at 746–47 ("An interpretation which gives reasonable meaning to all parts of a contract is preferred to one which renders part of it insignificant or useless.").

Of course, invoking an order of precedence clause to resolve an inconsistency between two design specifications will leave one of the specifications inoperative. Such situations are sometimes inevitable. In the instant case, however, the parties are not confronted with a dissonance between competing design specifications. Rather, because the tension is between a design specification and a performance specification, it is quite possible— indeed preferable—to read the design specification and performance specification as consistent contract provisions. Such a reading would hold plaintiff to utilize sound engineering principles as it performed the contract in accordance with the BOR's design specifications. A reading that reconciles performance specifications with design specifications is a permissible construction. *See Blake Constr.,*

987 F.2d at 746 ("Contracts may have both design and performance characteristics."). More importantly, "[e]stablished court precedent and rules of construction require that contract provisions should not be interpreted as conflicting with one another unless there is no other possible reasonable construction of the language." *International Transducer Corp. v. United States*, 30 Fed.Cl. 522, 526 (1994), *aff'd*, 48 F.3d 1235 (Fed.Cir.1995). Insofar as it is both reasonable and required, the court adopts this reading. Therefore, no inconsistency arises which properly would invoke the order of precedence clause. *See Sperry Corp.*, 845 F.2d at 968 (stating where no inconsistency exists, resort to order of precedence clause not required).

## CONCLUSION

For purposes of defendant's motion to dismiss, the drawings contained within defendant's permit application constitute design specifications. Defendant has failed to establish that the drawings afforded plaintiff discretion to depart from their specifications. Plaintiff has thus stated a claim for which relief may be granted. Accordingly,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss is denied.

2. The parties shall file a Joint Status Report by July 7, 1999, proposing a course of further proceedings.

